**Ed GARDNER and Frances Gardner, Appellants,**

v.

**STATE FARM LLOYDS and State Farm Fire and Casualty Company, Appellees.**

**No. 01–00–00411–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

March 28, 2002.

Publication Ordered April 22, 2002.

Bruce M. Feichtinger, Whittington-von Sternberg, Houston, for Appellant.

Levon G. Hovnatanian, Martin, Disiere & Jefferson, L.L.P., Christopher W. Martin, Warren Taylor, Taylor & Taylor, Houston, for Appellee.

Panel consists of Justices MIRABAL, HEDGES, and JENNINGS.

## OPINION

ADELE HEDGES, Justice.

Plaintiffs/appellants, Ed Gardner and Francis Gardner, sued defendants/appellees, State Farm Lloyds and State Farm Fire and Casualty Company ("State Farm"), for breach of contract, bad faith, and statutory violation claims. The trial court rendered summary judgment in favor of State Farm. We affirm.

### Background

The Gardners allege that the roof of their home was damaged during a hailstorm on April 20, 1995. They filed a claim with their homeowners' insurer, State Farm. After conducting two inspections, State Farm determined that any loss was less than the $500 policy deductible; therefore, State Farm did not pay the claim.

Shortly thereafter, the Gardners invoked the appraisal provision of their State Farm homeowners' insurance policy, which stated as follows:

> Appraisal. If you and we fail to agree on the actual cash value, amount of loss, or cost of repair or replacement, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire.... The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item.... If the appraisers fail to agree, they will submit their differences to the

umpire. An itemized decision by any two of these three and filed with (the insurance company) will set the amount of the loss. Such award shall be binding on you and us.

Under the terms of the policy, State Farm selected Don Boudreaux ("State Farm's Appraiser") of Haag Engineering Company ("Haag") to serve as its appraiser. The Gardners selected Vance Hardie ("the Gardner's Appraiser") of A.J. Vice & Co., Inc. The two appraisers selected Marty Beasley ("Umpire") of All State Roof Inspections as umpire to resolve any differences between the two appraisers' estimates.

State Farm's Appraiser inspected the Gardners' roof, but did not find hail damage exceeding the amount of the policy deductible. The Gardners' Appraiser disagreed, and the dispute was submitted to the Umpire. The Umpire agreed with State Farm's Appraiser and found that any damage did not exceed the policy deductible. The Umpire and State Farm's Appraiser signed an appraisal determination which awarded the Gardners no money as a result of the storm. Under the terms of the policy, a decision by the Umpire and either one of the two appraisers sets the amount of the loss, and the award is binding. Because the estimated damages did not satisfy the $500 policy deductible, State Farm made no payments to the Gardners.

The Gardners sued State Farm for breach of contract, bad faith, and statutory violation claims. State Farm moved for summary judgment, arguing that the Gardners were estopped from pursuing their claims because there had been a valid presuit appraisal determination. The trial court rendered summary judgment for State Farm. The Gardners appeal, arguing that the trial court erred in rendering summary judgment.

## Standard of Review

To prevail on a motion for summary judgment, a defendant must establish that no material fact issue exists and that it is entitled to judgment as a matter of law. *See Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222 (Tex.1999). A defendant who moves for summary judgment on the basis of an affirmative defense has the burden to prove conclusively all the elements of the affirmative defense as a matter of law. *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). In conducting our review of the summary judgment, we take as true all evidence favorable to the nonmovant, and we make all reasonable inferences in the nonmovant's favor. *Id.*

## Appraisal Award

In issue one, the Gardners contend that the trial court erred in rendering summary judgment for State Farm and that the appraisal award should be set aside.

An appraisal award made pursuant to the provisions of an insurance contract is binding and enforceable. *Wells v. Am. States Preferred Ins. Co.,* 919 S.W.2d 679, 683 (Tex.App.-Dallas 1996, writ denied); *Barnes v. W. Alliance Ins. Co.,* 844 S.W.2d 264, 267 (Tex.App.-Fort Worth 1992, writ dism'd by agr.). Texas courts recognize three situations in which an appraisal award may be disregarded: (1) when the award was made without authority; (2) when the award was the result of fraud, accident, or mistake; or (3) when the award was not made in substantial compliance with the terms of the contract. *Wells,* 919 S.W.2d at 683; *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.,* 877 S.W.2d 872, 875–76 (Tex.App.-San Antonio 1994, no writ). The Gardners argue that exceptions (2) and (3) apply.

■ The policy states that each party will "select a competent, independent appraiser." In a subsequent letter to the Gardners, State Farm explained:

> The qualifications of the appraisers are that they be competent and independent. The appraisers should be competent with respect to identification of damage and independent insofar as the appraisers are unbiased and free of control to arrive at their own evaluation of the loss. In short, the appraiser should have knowledge in identifying damage and act fairly, without bias, and in good faith.

The Gardners contend that State Farm's Appraiser was not "independent," as required by the terms of the policy. They contend that the award was the result of fraud because, at the time of the appraisal, they did not know that State Farm's Appraiser lacked independence. According to the Gardners, summary judgment was improper because questions of material fact exist about whether the appraisal award was the result of fraud or was not made in substantial compliance with the terms of the contract.

The Gardners attempted to prove a pre-existing relationship between State Farm and Haag—the employer of State Farm's Appraiser, Don Boudreaux. However, they presented no evidence that State Farm influenced or exercised control over Boudreaux. There is no evidence that Boudreaux ever was an employee of State Farm or had a financial interest in the claim. None of their evidence relates to Boudreaux, the Gardners' claim, or the particular hailstorm. Instead, their evidence involves an arm's length business relationship, which is unrelated to this specific claim, between various State Farm companies and Haag.

In summary, the Gardners presented evidence that: (1) Haag wrote a training program used by State Farm, about hail damage claims; (2) Haag wrote numerous publications about hailstorm evaluations, and served as a "consultant" for State Farm on those matters; and (3) Haag was paid by various State Farm companies for assignments across the United States over seven years.

First, the Gardners presented deposition testimony from a Dallas County suit of a former State Farm employee who vaguely remembered a "training program that was actually produced by Haag" and used by State Farm. Second, they presented publications by various Haag engineers regarding research on causes and the nature of roof damage. Third, they relied on evidence of money Haag reportedly received from various State Farm companies (not limited to State Farm Lloyds) for work assignments across the United States over a period of seven years. There was no reference to: the area of the country where Haag, an international engineering firm, performed the work; the type or extent of the work Haag performed; the specific company or companies for which the work was done; a comparison of Haag's gross receipts to the amount received from State Farm over the seven years in question; or Boudreaux's involvement, if any, in that work. In fact, Boudreaux's name is not mentioned in any of the Gardners' evidence. Although the Gardners' evidence might tend to show Haag's expertise in the field, it is not evidence that Boudreaux lacked independence.

*Mays v. Foremost Insurance Co.* discusses the quantum of evidence necessary to defeat summary judgment based on the preclusive effect of an appraisal award. 627 S.W.2d 230, 234 (Tex.App.-San Antonio 1981, no writ). In *Mays*, the insurer and its selected appraiser maintained a continuing business relationship, the insur-

**144**

er directed its appraiser to object to a former umpire upon which the appraisers had previously agreed, and the insurer acted in concert with the new umpire in determining the award. *Id.* Based on that evidence, there were genuine issues of material fact about whether the appraisal procedure was complied with fully, fairly, and without undue influence by the insurer. *Id.*

*Mays* is distinguishable, however. Here, there is no evidence that State Farm directed Boudreaux to reach any conclusions. Nor is there any evidence of foul play by the Umpire. In fact, the Gardners never complained about the Umpire.

The facts in this case are more analogous to *American Central Insurance Co. v. Terry*, 298 S.W. 658, 662 (Tex.Civ.App.-Texarkana 1927, no writ). The insured in *Terry* argued that the insurance company's appraiser was not impartial because the company had selected him as its appraiser "many times before" and he "had consistently served with partiality and bias in making awards of amount of damage." *Id.* The court held, "Even if true, this fact alone would not necessarily or probably be inconsistent with his impartiality in the present case, in the absence of some act or conduct tending to exhibit his serving the company's interest as a partisan would." *Id.* The insured in *Terry* complained about a pre-existing relationship between the insurance company and the *appraiser.* *Id.* In contrast, the Gardners complain about a pre-existing relationship between the insurance company and the *appraiser's employer.* As in *Terry,* the Gardners presented no evidence that the appraiser performed "some act or conduct tending to exhibit his serving the company's interest as a partisan would." *Id.*

Viewing the evidence in the light most favorable to the Gardners, there is no evidence raising a fact issue about whether

State Farm's Appraiser lacked independence. We hold that the trial court properly rendered summary judgment for State Farm.

We overrule issue one.

### Conclusion

We affirm the judgment of the trial court.