# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00533-CV

**Rosa Enu Cantu, Appellant**

**v.**

**Southern Insurance Company, Appellee**

---

**FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT
NO. 29,079, HONORABLE REVA TOWSLEE CORBETT, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Rosa Enu Cantu appeals from the trial court's summary judgment in favor of Southern Insurance Company in this declaratory judgment action arising out of damage to Cantu's home in the 2011 Bastrop County wildfires. Southern, Cantu's homeowners' insurer, sought declaratory judgment that the damage award issued pursuant to the policy's appraisal clause was valid and binding, that by paying the appraisal award, Southern had fulfilled its obligations under the policy, and that payment had been prompt. In three issues, Cantu asserts that the trial court erred in granting summary judgment because the appraisal did not substantially comply with the terms of the policy and because Cantu's extra-contractual claims were not extinguished by the appraisal. For the reasons that follow, we affirm the trial court's summary judgment.

# BACKGROUND

Cantu's house was damaged by the 2011 Bastrop County wildfires, and she subsequently filed a claim with her insurance provider, Southern, on or about September 4, 2011. Southern hired an independent adjuster to inspect the loss and issue payment to Cantu. Cantu was dissatisfied with the proposed amount of payment and obtained counsel and her own adjuster. Southern's and Cantu's adjusters could not reach an agreement, and in January 2012, Cantu filed suit in the 21st District Court of Bastrop County, asserting claims for breach of contract, breach of the duty of good faith and fair dealing, and violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act (Original Bastrop Suit). After Cantu filed suit, Southern invoked the appraisal clause in the homeowners insurance policy. The appraisal provision of the policy states:

> **SECTION 1 - CONDITIONS**
>
> **7. Appraisal.** If you and we do not agree on the actual cash value, amount of loss or cost of repair or replacement, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will chose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred. The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item. If you or we request that they do so, the appraisers will also set:
>
> > a. the full replacement cost of the dwelling.
> >
> > b. the full replacement cost of any other building upon which loss is claimed.
> >
> > c. the full cost of repair or replacement of loss to such building, without deduction for depreciation.

If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. Such award shall be binding on you and us.

Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

Under this provision, either party can call for an appraisal, each side appoints an appraiser, and the appraisers choose an umpire. If the appraisers do not agree on an umpire, either party may ask a district judge to select one. If the appraisers do not agree on the amount of loss, they submit their differences to the umpire, and only two of the three actors need to agree on the amount for the appraisal award to become final. The final agreed-to amount is binding and enforceable on both parties. *See Gardner v. State Farm Lloyds*, 76 S.W.3d 140, 142 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

Cantu and Southern each named an appraiser; however, the appraisers did not reach an agreement on an umpire, leading Southern to request that a district judge appoint one pursuant to the appraisal clause. On September 5, 2012, Judge Flenniken of the 21st District Court of Bastrop County appointed an umpire. On January 16, 2013, Judge Campbell, sitting in the same court, removed the first-appointed umpire and appointed a replacement umpire. Cantu did not object to the appointment of the new umpire, ask for reconsideration, or file a petition for a writ of mandamus seeking to overturn the appointment. In April 2013, the replacement umpire and Southern's appraiser reached an agreement on the amount of the loss. Southern promptly tendered a check for the full replacement cost value of the appraisal award less Cantu's deductible and Southern's prior

3

payments. On July 8, 2013, Cantu, who disputed the appraisal award and refused to accept or negotiate the check, nonsuited her claims.[1]

On July 10, 2013, Southern filed a declaratory judgment action in the 335th District Court of Bastrop County seeking declarations that:

- the appraisal award signed by Southern's appraiser and the umpire is valid and binding on the parties with regard to the amount of Cantu's loss;

- Southern's payment of the appraisal award fulfills its obligations under the insurance policy with regard to Cantu's claim; and

- Southern's liability to pay Cantu's claim was not reasonably clear until the appraisal award was issued and Southern's payment was therefore prompt for purposes of Texas Insurance Code sections 541.061 and 542.060 and tie-in provisions of the DTPA.

Southern subsequently filed a combined traditional and no-evidence motion for summary judgment.[2] Cantu filed a competing motion for summary judgment and a response to Southern's motion. The trial court granted Southern's motion.[3] This appeal followed.

---

[1] Cantu then filed suit in Dallas County District Court on July 16, 2013, raising the same claims that were nonsuited in the Original Bastrop Suit. Dallas County abated Cantu's claims against Southern and ultimately transferred them back to the 21st District Court of Bastrop County. After Southern filed a plea in abatement, motion to dismiss, and other motions, the 21st District Court of Bastrop County dismissed Cantu's claims. Cantu's appeal of the dismissal is pending before this Court in cause number 03-15-00303-CV.

[2] Southern asserted traditional summary judgment arguments in support of the declarations it sought and no-evidence summary judgment arguments as to Cantu's affirmative defenses. Because Cantu does not assert any issues on appeal related to her affirmative defenses, we will apply the standard of review for traditional motions for summary judgment.

[3] The order granting Southern's motion for summary judgment does not expressly address Cantu's competing motion for summary judgment.

**STANDARD OF REVIEW**

We review declaratory judgments under the same standard as other judgments or decrees. Tex. Civ. Prac. & Rem. Code § 37.010; *Hawkins v. El Paso First Health Plans, Inc.*, 214 S.W.3d 709, 719 (Tex. App.—Austin 2007, pet. denied). Here, because the trial court rendered the declaratory judgment through summary judgment proceedings, "we review the propriety of the trial court's declarations under the same standards we apply to summary judgment." *See Hawkins*, 214 S.W.3d at 719. We review the court's decision to grant summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We take as true all evidence favorable to the non-moving party, and we indulge every reasonable inference and resolve any doubts in the non-moving party's favor. *Id.* To prevail on a traditional summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). When the movant satisfies this initial summary judgment burden, the burden shifts to the nonmovant to produce evidence raising an issue of fact. *See* Tex. R. Civ. P. 166a(c); *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 517 (Tex. 2014).

When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions presented and, if we determine that the trial court erred, render the judgment the trial court should have rendered. *Dorsett*, 164 S.W.3d at 661 (citing *FM Props.*

5

*Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000)). "When the trial court's ruling granting one summary judgment motion necessarily denies another pending motion for summary judgment on the same issue, such as here, we imply the ruling of denial." *Potter v. Clear Channel Outdoor, Inc.*, No. 01-07-00578-CV, 2009 Tex. App. LEXIS 5077, at *14 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (mem. op.); *see Frank's Int'l, Inc. v. Smith Int'l, Inc.*, 249 S.W.3d 557, 559 n.2. (Tex. App.—Houston [1st Dist.] 2008, no pet.) (ruling in appellee's favor on motion for summary judgment necessarily denied appellant's competing motion).

Cantu's issues also involve matters of contract construction. The construction of an unambiguous contract is a question of law that we review de novo. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011). When the agreement as written is ambiguous, however, the parties' intent becomes a fact issue. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). "A contract is not ambiguous simply because the parties disagree over its meaning." *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). Whether a contract is ambiguous is itself a legal question for the court. *Id.* In determining ambiguity, we "should construe the contract from a utilitarian standpoint, bearing in mind the particular business activity sought to be served." *Lenape Res. Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996).

Our primary concern in construing a contract is to ascertain and give effect to the intent of the parties as expressed in the instrument. *Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005) (per curiam). We must not look to isolated terms but are to consider the instrument as a whole. *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 789 (Tex.

6

1995); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) ("No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."). When the provisions of a contract appear to conflict, we must attempt to harmonize and give effect to all of the terms so that no part will be rendered meaningless. *Dorsett*, 164 S.W.3d at 662; *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex. 1983). "Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Dorsett*, 164 S.W.3d at 662.

## ANALYSIS

**Appraisal Award**

In her first two issues, Cantu argues that the appraisal is not valid and binding because the umpire was without authority to act and because the appraisal did not comply with the strict requirements of the insurance policy. In its motion for summary judgment, Southern argued that the appraisal award signed by the umpire and one appraiser was valid and binding under the terms of the policy and that Cantu had not asserted in her pleadings that it was invalid or offered evidence of any of the three circumstances in which an otherwise valid and binding appraisal can be disregarded. We agree.

"Appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable, and every reasonable presumption will be indulged to sustain an appraisal award." *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *see Scottish Union & Nat'l Ins. Co. v. Clancy*, 8 S.W. 630, 631–32 (Tex. 1888); *Gardner*, 76 S.W.3d at 142; *Wells v. American States Preferred Ins. Co.*, 919 S.W.2d 679, 683 (Tex.

7

App.—Dallas 1996, writ denied). "Texas courts recognize three situations in which an appraisal award may be disregarded: (1) when the award was made without authority; (2) when the award was the result of fraud, accident, or mistake; or (3) when the award was not made in substantial compliance with the terms of the contract." *Franco*, 154 S.W.3d at 786; *Gardner*, 76 S.W.3d at 142; *Wells*, 919 S.W.2d at 683. Southern offered as summary judgment evidence the appraisal award signed by the umpire and one appraiser. Thus, Southern met its summary judgment burden to establish that the appraisal was valid and binding, and the burden shifted to Cantu to create a fact issue as to one of the three grounds for setting aside an appraisal award. *See Amedisys*, 437 S.W.3d at 517; *Franco*, 154 S.W.3d at 786. Although Cantu did not challenge the appraisal in her own motion for summary judgment, in her response to Southern's motion, she argued that exceptions (1) and (3) apply. We address each in turn.

**Appointment of Replacement Umpire**

Cantu argues in her first issue that the appraisal award was made without authority because it was agreed to only by Southern's appraiser and the replacement umpire, who was without authority. This argument is based on Cantu's contention that the 21st District Court had no authority under the insurance contract to appoint a replacement umpire. Cantu agrees that the 21st District Court had authority to appoint an umpire. However, she contends that once an umpire was appointed, the court's involvement in the appraisal process was complete, and the court was without jurisdiction to interfere.

Southern argues that Cantu's challenge to the 21st District Court's order appointing a replacement umpire is a collateral attack. *See Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex.

2005) ("A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against."). Because a district court does not have the authority to review or invalidate an order from a court of concurrent jurisdiction, Southern contends that the 335th District Court could not rule on its sister court's order or authority. *See* Tex. Gov't Code §§ 24.007, 22.220 (setting out jurisdiction of district courts and appellate courts respectively). Alternatively, Southern argues that if the 335th had jurisdiction to review the order, there is nothing in the insurance policy that limits a district judge's authority to appoint, remove, or replace the appraisal umpire.

Cantu does not attack a final judgment, but she does challenge an order that was issued by the 21st District Court, not by the 335th District Court, from which this appeal originates. Even if we were to agree with Southern that Cantu's challenge to an order issued by the 21st District Court in an action pending before the 335th District Court is in the nature of a collateral attack, she attacks an order issued in a separate proceeding to which she did not object in that proceeding. Cantu has offered no evidence that she objected to the appointment of the replacement umpire, sought a reconsideration, or filed a petition for writ of mandamus seeking to overturn the appointment. Nor did she proceed with the case and appeal the order following final judgment in the 21st District Court; instead, she nonsuited her claims. We do not believe Cantu's challenge of the 21st District Court's order is properly before this Court in this appeal from the 335th District Court's summary judgment. *See id.* §§ 24.007, 22.220.

9

Even were we to conclude that we may consider Cantu's challenge to the order, we would conclude that the 21st District Court was within its authority under the contract in appointing a replacement umpire. Under the terms of the appraisal clause, that court had authority to appoint an umpire, and nothing in the policy precludes the judge's replacing his own appointment should he determine it to be appropriate to do so. Construing the appraisal clause from a utilitarian standpoint and considering the purpose of the provision giving a court authority to appoint an umpire, we would conclude that the appraisal clause is unambiguous and the trial court had the authority to appoint a replacement umpire. *See Lenape*, 925 S.W.2d at 574; *Laas v. State Farm Mut. Auto. Ins. Co.*, No. 14-98-00488-CV, 2000 Tex. App. LEXIS 5332, at *13 (Tex. App.—Houston [14th Dist.] Aug. 10, 2000, pet. denied) (not designated for publication) (where policy was silent with respect to appointment of umpire when one of appraisers failed to act, trial court was authorized to appoint umpire); *see also State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 895 (Tex. 2009) (affirming appellate court's order reversing trial court and granting insured's motion for summary judgment to compel insurer to participate in appraisal process); *Standard Fire Ins. Co. v. Fraiman*, 514 S.W.2d 343, 344–46 (Tex. Civ. App.—Houston [14th Dist.] 1974, no writ) (holding that trial court had authority to order insurance company to appoint appraiser where insured invoked appraisal clause).

Further, if a district judge cannot appoint a replacement umpire when an umpire becomes unable to perform his duties, such as in circumstances of disability or death, parties whose appraisers cannot agree on an umpire will be left with no recourse. To construe the appraisal clause as precluding appointment of replacements would therefore be inconsistent with the appraisal clause

10

as a whole, would stall the appraisal process and render the appraisal clause meaningless, and would contravene the expressed intent of the parties to resolve disputes over umpire selection through judicial appointment. *See Frost Nat'l Bank*, 165 S.W.3d at 311–12; *Dorsett*, 164 S.W.3d at 662; *Crews*, 898 S.W.2d at 789.

As for Cantu's contention that the replacement was sua sponte and without notice to Cantu, denying her due process, the record in that case, of which we take judicial notice, reflects that the 21st District Court removed the previously appointed umpire and appointed the replacement umpire on the motion of Southern after considering "the Plaintiff's response" and "arguments of counsel." In addition, the docket sheet appears to reflect that Cantu filed a response to Southern's motion and that a hearing was held. The record further shows that the trial court confirmed the appointment of the replacement umpire when it ordered the parties to proceed with the appraisal. Thus, even assuming our jurisdiction to consider this issue, we would conclude that Cantu did not meet her burden to create a fact issue as to the authority of the replacement umpire. We overrule Cantu's first issue.

**Substantial Compliance**

In her second issue, Cantu claims that the appraisal award is invalid because the appraisal did not comply with the strict requirements of the insurance policy. Specifically, she complains that there is no evidence that the appraisers submitted their differences to the umpire and that the appraisal is not an "itemized decision." Southern contends that the appraisal is sufficiently itemized and substantially complies with the policy. Southern does not address Cantu's argument concerning the lack of evidence that the appraisers submitted their differences to the umpire.

11

The relevant portion of the appraisal clause provides:

> [t]he two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item. . . . If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three [(two appraisers and the umpire)] and filed with [Southern] will set the amount of the loss.

As previously stated, the third circumstance in which an appraisal award may be disregarded is when the award was not made in substantial compliance with the terms of the contract. *Franco*, 154 S.W.3d at 786; *Gardner*, 76 S.W.3d at 142; *Wells*, 919 S.W.2d at 683. "Substantial compliance" occurs when the appraisers comply with the essential requirements of the contract. *See Hall v. Needham*, No. 03-96-00033-CV, 1999 Tex. App. LEXIS 8601, at *5 (Tex. App.—Austin 1999, no pet.) (not designated for publication) (*citing Santos v. Guerra*, 570 S.W.2d 437, 440 (Tex. Civ. App.—San Antonio 1978, writ ref'd n.r.e.)). When the facts are undisputed, substantial compliance is a question of law for the court to decide. *First Sw. Lloyds Ins. Co. v. MacDowell*, 769 S.W.2d 954, 959 (Tex. App.—Texarkana 1989, writ denied).

Under the terms of the policy, Cantu's appraiser and Southern's appraiser were each supposed to set the amount of loss, communicate with each other, and then submit their differences to the umpire. Cantu "contends that [the appraisers] did not [submit their differences to the umpire] and there is no evidence that [they] did." However, it was Cantu's burden to create a fact issue as to the occurrence of submission to the umpire. *See Amedisys*, 437 S.W.3d at 517; *Franco*, 154 S.W.3d at 786. Cantu offered no evidence that the appraisers did not submit their differences to the umpire. While proving a negative can at times be difficult, here, Cantu could have offered an

12

affidavit from her appraiser testifying that he never communicated with Southern's appraiser or that they did not submit their differences to the umpire. *See Richardson v. Allstate Tex. Lloyd's*, No. 05-06-00100-CV, 2007 Tex. App. LEXIS 5384, at *3–4 (Tex. App.—Dallas 2007, no pet.) (mem. op.) (citing testimony that one appraiser never saw written estimate from other appraiser and did not meet with other appraiser or umpire to discuss disputed items in concluding that record did not reflect substantial compliance with policy).

Cantu also argues that the appraisal award is "not 'itemized' within the meaning of the policy." The appraisal clause provided that "an itemized decision" agreed to by two of the three participants in the appraisal process sets the amount and is binding. It is undisputed that the appraisal award signed by Southern's appraiser and the umpire read as follows:

| | | | REPLACEMENT COST | DEPRECIATION | ACV-AMT OF LOSS |
|---|---|---|---|---|---|
| Item | Dwelling | | $77,509.39 | $7,750.93 | $69,758.46 |
| Item | Personal Property | | $13,365.00 | $1,336.50 | $12,028.50 |
| Item | Additional Living Expense | | $17,213.07 | $0.00 | $17,213.07 |
| Item | Damage from Testing | | $2,115.16 | $0.00 | $2,115.16 |
| Item | | | | | |
| | | | | | |
| TOTAL AMT LOSS | | | $110,202.62 | $9,087.43 | $101,115.19 |

Thus, it set out the replacement cost, depreciation, and actual cash value-amount of loss for each coverage provided under the policy, which are characterized as "items." The policy does not define "itemize," so we look to its ordinary meaning. *See Dorsett*, 164 S.W.3d at 662. "Itemize" means "to list in detail; to state by items." *Black's Law Dictionary* 160 (10th ed. 2014). "Item" is defined as "a piece of a whole, not necessarily separated." *Id.* Applying these plain meanings, we conclude

13

that the appraisal award here substantially complies with the appraisal clause provision that an "itemized decision" be agreed to by two of the three participants in the appraisal process. *See Dorsett*, 164 S.W.3d at 662; *Franco*, 154 S.W.3d at 786; *MacDowell*, 769 S.W.2d 959.

Cantu relies on *Richardson* in arguing that the appraisal award does not comply with the policy requirement because it states amounts for whole classes of loss without identifying the cost of any item affected by the loss. *See* 2007 Tex. App. LEXIS 5384. In *Richardson*, the insured sued the insurer seeking to set aside the appraisal award. *See id.* at *5. The insurer moved for summary judgment on several grounds, including that the insured could not prove any of the grounds for setting aside the award. *Id.* The summary judgment evidence showed that the appraisers signed a one-page form that included a chart with three columns. *See id.* at *3. The first column was titled "ITEM," and the phrase "to be determined by hygienist" was hand-written beneath that title on the first numbered line, while the next two columns titled "LOSS REPLACEMENT COST" and "LOSS ACTUAL CASH VALUE" were left blank. *Id.* Subsequently, either one of the appraisers or the umpire wrote a lump sum amount under the column "LOSS REPLACEMENT COST" next to the phrase "to be determined by hygienist" previously written on the form, and one appraiser and the umpire signed it. *Id.* at *4. Here, unlike the appraisal award in *Richardson*, which left blank the columns for each "ITEM" and for "LOSS REPLACEMENT COST" and "LOSS ACTUAL CASH VALUE" and stated only a single lump sum amount, the award here listed as "items" the coverages under the policy and stated a replacement cost, depreciation and actual cash value-amount of loss for each.

14

The *Richardson* court concluded that the appraisal award was not itemized because it was "merely . . . a lump-sum award written next to the phrase 'to be determined by the hygienist'" and did not "categorize[] the contents of the home in a manner customary in the insurance industry." *Id.* at *9. However, the court agreed that when the entire contents of a home are contaminated, as was the case in *Richardson*, it is not necessary to list and separately appraise every single item. *Id.* Further, in concluding that the appraisal award did not substantially comply with the terms of the policy, the court relied on summary judgment evidence that the two appraisers never discussed disputed items and that only one of them met with the umpire. *Id.* at *8. The court also cited the insurer's failure to produce evidence that the appraisers submitted their differences to the umpire. *Id.* Thus, in *Richardson*, in addition to relying on the mostly-blank, lump sum appraisal award itself, the court relied on the insurer's failure to establish that the appraisers and umpire followed the required procedures and thus failed to meet its summary judgment burden to negate the insured's asserted grounds for setting aside the appraisal award. The procedural posture in *Richardson* distinguishes it from this case. Here, Southern sued Cantu, and she did not assert any grounds for setting aside the appraisal until the summary judgment burden shifted to her to show that an otherwise binding and enforceable appraisal award should be set aside. Cantu produced no evidence that the appraisers and umpires did not comply with the requisite procedure and did not meet that burden.

On the facts before us, where the appraisal award listed separate loss values for each category of coverage rather than a single lump sum for the total loss, and where Cantu failed to produce any evidence that the appraisers and umpire did not follow the required procedure, we find

15

*Richardson* distinguishable. *See Michels v. Safeco Ins. Co. Of Ind.*, 544 Fed. Appx. 535, 541–42 (5th Cir. 2013) (per curiam) (holding that appellants' complaint about itemization was estopped because their appraiser requested that umpire use non-itemized, lump sum form, but stating that even if appellants could have brought argument, court would have concluded that lump sum appraisal award substantially complied with policy where evidence showed appraisers met to discuss itemized estimates and submitted disputes to umpire). Minor discrepancies in the award do not invalidate the award. *Id.* at 541 (citing *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*, 877 S.W.2d 872, 875 (Tex. App.—San Antonio 1994, no writ)). Because Cantu failed to meet her summary judgment burden to establish that the appraisers did not submit their differences to the umpire, and because we conclude that the appraisal award substantially complied with the requirements of the policy, we overrule Cantu's second issue.

**Extra-contractual Claims**

In her third issue, Cantu contends that the trial court's summary judgment as to the validity of the appraisal award did not extinguish her claims of bad faith based on pre-appraisal conduct. In both her own motion for summary judgment and her response to Southern's motion, Cantu argued that her bad faith claims survive the appraisal. In its motion for summary judgment, Southern argued that its liability was not "reasonably clear" until the appraisal award was issued and that Cantu's bad faith claims did not survive payment of the appraisal award because payment satisfied its contractual obligations under the policy. Southern produced summary judgment evidence that when Cantu rejected its payment of the claim, Southern promptly invoked the appraisal clause, sought the appraisal award, and tendered payment of the appraisal award and that

16

its liability was undetermined until the appraisal award was issued. "As a general rule, an insured does not have a bad faith claim in the absence of a breach of contract by the insured." *Toonen v. United Servs. Auto. Ass'n*, 935 S.W.2d 937, 941–42 (Tex. App.—San Antonio 1996, no writ) (citing *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995)); *see Lundstrom v. United Servs. Auto. Ass'n - CIC*, 192 S.W.3d 78, 95 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (holding that there can be no claim for bad faith when insurer denies claim that is not covered and has not otherwise breached contract). Thus, Southern met its summary judgment burden to establish that it had met its contractual obligations, precluding Cantu's bad faith claims, and the burden shifted to Cantu to produce evidence creating a fact issue.

Cantu is correct that the appraisal award would not necessarily bar her extra-contractual claims for pre-appraisal conduct. *See Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) ("We have left open the possibility that an insurer's denial of a claim it was not obliged to pay might nevertheless be in bad faith if its conduct was extreme and produced damages unrelated to and independent of the policy claim."); *Stoker*, 903 S.W.2d at 341 ("We do not exclude, however, the possibility that in denying the claim, the insurer may commit some act, so extreme, that would cause injury independent of the policy claim."). However, while Cantu did refer to her bad faith claims in both her own motion for summary judgment and her response to Southern's motion, she produced no summary judgment evidence whatsoever related to bad faith claims, much less any evidence of "extreme" behavior. The summary judgment record contains no evidence concerning the nature of the pre-appraisal conduct Cantu contends subjects

Southern to liability for bad faith.  In the absence of any such evidence, the trial court did not err in granting summary judgment in favor of Southern on these issues.  We overrule Cantu's third issue.

## CONCLUSION

Having overruled Cantu's issues, we affirm the trial court's summary judgment.

                                              _____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:   August 25, 2015

18