

## NUMBER 13-24-00576-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

## IN RE GERMANIA FARM MUTUAL INSURANCE ASSOCIATION

## ON PETITION FOR WRIT OF MANDAMUS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Peña and Cron
Memorandum Opinion by Chief Justice Tijerina[1]**

Relator Germania Farm Mutual Insurance Association (Germania) filed a petition

for writ of mandamus asserting that the trial court[2] abused its discretion by: (1) setting

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.1 (requiring the appellate courts to "hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition"); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] This original proceeding arises from trial court cause number CL-23-3077-E in the County Court at Law No. 5 of Hidalgo County, Texas, and the respondent is the Honorable Arnoldo Cantu. *See id.* R. 52.2.

aside an appraisal award, and (2) failing to comply with the relevant insurance policy in appointing a new umpire. We conditionally grant the petition for writ of mandamus.

## I.    BACKGROUND

Real party in interest Maria Trejo made a claim under her homeowner's insurance policy for damage sustained to her property in a storm. Following Germania's inspection of the alleged damages, Germania informed Trejo that the estimated damage to her property did not exceed her deductible. Trejo disagreed with Germania's assessment of her losses and invoked the appraisal process under the provisions of her insurance policy. Pursuant to the policy, Germania and Trejo each appointed their own appraisers, who did not agree as to the value of Trejo's property damages. Accordingly, the parties' dispute was submitted to an umpire. The umpire entered an appraisal award consistent with the value of the claim as estimated by Germania's appraiser. Germania paid Trejo $10,410.84. The payment amount represented the value of the appraisal award, $13,297.75, less a deductible of $4,340.00, plus a prompt payment interest penalty in the amount of $1,453.09.

On or about August 18, 2024, Trejo filed a motion to set aside the appraisal award. She argued that the appraisal award should be set aside on grounds that:

> (1) the award was made without authority; (2) the award was made as a result of fraud, accident, and mistake; (3) the award was not in compliance with the requirements of the policy; and (4) the award is not an honest assessment of the 'value of the property or the amount of loss.'

Germania filed a response to Trejo's motion asserting, *inter alia*, that Trejo offered "no evidence whatsoever" in support of her allegations.[3]

---

[3] On August 30, 2024, Germania filed a motion for partial summary judgment against Trejo asserting that some of her claims were barred because an appraisal panel had set the amount of loss, and Germania had paid Trejo the amount due pursuant to the appraisal award as well as the interest that had

2

On September 23, 2024, the trial court held a non-evidentiary hearing on Trejo's motion to set aside the appraisal award. During the hearing, the trial court verbally granted Trejo's motion and set aside the appraisal award. Germania thereafter filed a motion for reconsideration of the trial court's ruling. The trial court held another non-evidentiary hearing on October 21, 2024, regarding, among other things, Germania's motion for reconsideration. On October 22, 2024, the trial court signed an order denying Germania's motion for reconsideration. On November 5, 2024, the trial court sua sponte signed an order appointing a new umpire in the case.

By petition for writ of mandamus,[4] Germania contends that the trial court abused its discretion by granting Trejo's motion to set aside the appraisal award and by appointing a new umpire. This Court requested and received a response to the petition for writ of mandamus from Trejo and further received a reply thereto from Germania. *See* TEX. R. APP. P. 52.4, 52.5, 52.8.

## II. MANDAMUS

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148

---

accrued as a prompt payment penalty. The trial court denied Germania's motion for partial summary judgment, but that ruling is not at issue in this original proceeding.

[4] In six issues, which we construe as two, Germania specifically contends that: (1) the trial court abused its discretion by granting Trejo's motion to set aside the appraisal award; (2) the trial court abused its discretion by denying Germania's motion to reconsider that ruling; (3) the trial court abused its discretion by setting aside the appraisal award because Trejo did not provide "evidence or argument" establishing that the appraisal award was made without authority; that the award was made as a result of fraud, accident, and mistake; that the award was not in compliance with the requirements of the policy; and that the award was not an honest assessment of the value of the property or the amount of loss; (4) the insurance policy and its appraisal provision do not require the umpire to physically inspect the property; (5) an umpire's failure to physically inspect the property cannot support a finding that the appraisal award should be set aside; and (6) the trial court abused its discretion by striking the umpire and appointing an umpire in violation of the terms of the appraisal provision in the insurance policy.

S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that: (1) the trial court abused its discretion; and (2) the relator lacks an adequate remedy on appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). "The relator bears the burden of proving these two requirements." *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam); *Walker*, 827 S.W.2d at 840.

Trial courts have no discretion to ignore a valid appraisal clause. *See State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888 (Tex. 2009); *In re Acceptance Indem. Ins.*, 562 S.W.3d 645, 649 (Tex. App.—San Antonio 2018, orig. proceeding); *In re State Farm Lloyds*, 514 S.W.3d 789, 792 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding). Thus, mandamus is available to remedy certain matters pertaining to the appraisal process. *See In re Universal Underwriters of Tex. Ins.*, 345 S.W.3d 404, 412 (Tex. 2011) (orig. proceeding) (granting mandamus relief to enforce the right to appraisal); *In re Allstate Cnty. Mut. Ins.*, 84 S.W.3d 193, 196 (Tex. 2002) (orig. proceeding) ("A refusal to enforce the appraisal process here will prevent the defendants from obtaining the independent valuations that could counter at least the plaintiffs' breach of contract claim.").

### III. APPRAISAL

An insurance policy establishes the rights and obligations to which an insurer and its insured have agreed. *See In re Farmers Tex. Cnty. Mut. Ins.*, 621 S.W.3d 261, 270 (Tex. 2021) (orig. proceeding); *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018). We interpret insurance policies under the rules of construction that apply to

4

contracts in general. *Pharr-San Juan-Alamo Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self Ins. Fund*, 642 S.W.3d 466, 473 (Tex. 2022); *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 497 (Tex. 2020). Thus, appraisal clauses should be enforced like any other contractual provision. *Johnson*, 290 S.W.3d at 895. Our primary goal is to effectuate the parties' intent as expressed in the insurance policy. *Monroe Guar. Ins. v. BITCO Gen. Ins.*, 640 S.W.3d 195, 198–99 (Tex. 2022). "We determine the parties' intent through the terms of the policy, giving words and phrases their ordinary meaning, informed by context." *Dillon Gage Inc. of Dall. v. Certain Underwriters at Lloyds Subscribing to Pol'y No. EE1701590*, 636 S.W.3d 640, 643 (Tex. 2021).

"Appraisal clauses in Texas insurance policies have long provided a mechanism to resolve disputes between policy holders and insurers about the amount of loss for a covered claim." *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019). The Texas Supreme Court has explained the policies underlying the appraisal process as follows:

> Today, appraisal clauses are included in most property insurance policies. Access to the appraisal process to resolve disputes is an important tool in the insurance claim context, curbing costs and adding efficiency in resolving insurance claims. This Court has reasoned that "[l]ike any other contractual provision, appraisal clauses should be enforced." "[I]n every property damage claim, someone must determine the 'amount of loss,' as that is what the insurer must pay." Appraisal clauses are a means of determining the amount of loss and resolving disputes about the amount of loss for a covered claim.
>
> . . . .
>
> We note that an insurer's use of the policy's appraisal process represents a willingness to resolve a dispute outside of court—often without admitting liability on the claim, or even specifically disclaiming liability— similar to a settlement. An insurer's payment under such circumstances results from a calculated risk assessment that paying the appraisal value will ultimately be less risky or costly than litigating the claims to determine liability. As such, the payment in accordance with an appraisal is neither an acknowledgment of liability nor a determination of liability under the

5

policy . . . .

*Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 814, 820 (Tex. 2019) (citations omitted). The supreme court has described "the appraisal process as an efficient and less costly alternative to litigation, requiring 'no lawsuits, no pleadings, no subpoenas, and no hearings.'" *Ortiz*, 589 S.W.3d at 131 (quoting *Johnson*, 290 S.W.3d at 894); *see Barbara Techs. Corp.*, 589 S.W.3d at 814; *In re Universal Underwriters of Tex. Ins.*, 345 S.W.3d at 407.

Appraisal awards do not establish a party's liability, or lack thereof, but instead resolve the amount of the covered loss. *Barbara Techs. Corp.*, 589 S.W.3d at 828; *Ortiz*, 589 S.W.3d at 132; *Johnson*, 290 S.W.3d at 889–90. Thus, "appraisals do not supplant the judicial process." *Tex. Windstorm Ins. Ass'n v. Dickinson Indep. Sch. Dist.*, 561 S.W.3d 263, 276 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (collecting cases). In general, there are three instances in which the results of an otherwise binding appraisal may be disregarded: (1) when the award was made without authority; (2) when the award was made as a result of fraud, accident, or mistake; or (3) when the award was not in compliance with the requirements of the policy. *In re Auto Club Indem. Co.*, 580 S.W.3d 852, 855 (Tex. App.—Houston [14th Dist.] 2019, orig. proceeding); *Gardner v. State Farm Lloyds*, 76 S.W.3d 140, 142 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Wells v. Am. States Preferred Ins.*, 919 S.W.2d 679, 683 (Tex. App.—Dallas 1996, writ denied); *Providence Lloyds Ins. v. Crystal City Indep. Sch. Dist.*, 877 S.W.2d 872, 875–76 (Tex. App.—San Antonio 1994, no writ). Further, the supreme court has stated that an appraisal award may be set aside if it does not represent an "honest assessment of necessary repairs." *Johnson*, 290 S.W.3d at 895.

6

## IV. APPRAISAL AWARD

Germania asserts that the trial court abused its discretion by setting aside the appraisal award because Trejo's allegations regarding the award were conclusory and unsupported by the facts. Germania further argues that the insurance policy did not require the umpire to physically inspect the property and its failure to do so cannot support the trial court's ruling. In response, Trejo asserts that the appraisal award is "dishonest" and was "wrongfully executed."

"Appraisal awards made under the provisions of an insurance contract are binding and enforceable, and a court will indulge every reasonable presumption to sustain an appraisal award." *In re Auto Club Indem. Co.*, 580 S.W.3d at 855 (quoting *Lundstrom v. United Servs. Auto Ass'n-CIC*, 192 S.W.3d 78, 87 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)); *see also Stewart v. Tex. Farmers Ins.*, No. 02-23-00041-CV, 2023 WL 6300726, at *3 (Tex. App.—Fort Worth Sept. 28, 2023, no pet.) (mem. op.); *Richland Trace Owners Ass'n v. Landmark Am. Ins.*, No. 05-20-00944-CV, 2022 WL 1076177, at *2 (Tex. App.—Dallas Apr. 11, 2022, pet. denied) (mem. op.); *In re Tex. Mun. League Intergovernmental Risk Pool*, No. 13-20-00486-CV, 2021 WL 743305, at *1 (Tex. App.—Corpus Christi–Edinburg Feb. 25, 2021, orig. proceeding [mand. denied]) (mem. op.). "Because a court indulges every reasonable presumption to sustain an appraisal award, the burden of proof is on the party seeking to avoid the award." *In re Auto Club Indem. Co.*, 580 S.W.3d at 855 (quoting *Lundstrom*, 192 S.W.3d at 87); *see also In re Philadelphia Indem. Ins.*, No. 13-17-00506-CV, 2017 WL 5616272, at *2 (Tex. App.—Corpus Christi–Edinburg Nov. 20, 2017, orig. proceeding) (mem. op.).

Trejo's motion to set aside the appraisal award asserted generally that: (1) the

7

award was made without authority; (2) the award was made as a result of fraud, accident, and mistake; (3) the award was not in compliance with the requirements of the policy; and (4) the award was not an honest assessment of the "value of the property or the amount of loss." In support of her contentions, Trejo argued that the umpire essentially adopted the appraisal values determined by Germania's appraiser; the umpire did not visit the damaged property; the appraisal award improperly determined causation and liability issues "and "impermissibly bootstrap[ed] damages from a prior appraisal claim"; and the appraisal award was not an honest assessment of the damages because it omitted the cost of several repairs. As exhibits to her motion to set aside the appraisal award, Trejo provided: (1) a copy of the insurance policy at issue; and (2) correspondence regarding payment of the appraisal award and the corresponding checks issued by Germania.

Trejo bore the burden of proof to set aside the appraisal award. *See In re Auto Club Indem. Co.*, 580 S.W.3d at 855; *see also In re Philadelphia Indem. Ins.*, 2017 WL 5616272, at \*2. Thus, she was required to raise an issue of material fact regarding why the resolution that she contractually agreed to should be set aside. *See Nat'l Sec. Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 844 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Lundstrom*, 192 S.W.3d at 87. While Trejo offered various arguments for setting aside the appraisal award, she only offered the insurance policy and the appraisal award as evidence in support of those arguments. Those items, standing alone, do not raise an issue of material fact regarding the propriety of the appraisal award. *See In re Auto Club Indem. Co.*, 580 S.W.3d at 855. We further note that Trejo's contentions that the umpire's failure to inspect the property and the umpire's adoption of Germania's appraiser's valuation, without more, do not offer grounds for vacating the appraisal award. A

8

disagreement between appraisers or an umpire's adoption of one appraiser's valuation over another's does not constitute a ground to set aside an appraisal award. *See MLCSV10 v. Stateside Enters., Inc.*, 866 F.Supp.2d 691, 702 (S.D. Tex. 2012); *see also Abdalla v. Farmers Ins. Exch.*, No. 07-17-00020-CV, 2018 WL 2220269, at *2 (Tex. App.—Amarillo May 14, 2018, no pet.) (mem. op.). Additionally, there is no requirement in the insurance policy or in our case law for an umpire to physically inspect the damaged property. *Johnson*, 290 S.W.3d at 890 n.23; *see also Stewart v. Tex. Farmers Ins.*, 2023 WL 6300726, at *5. The umpire's decision not to personally inspect Trejo's property is no evidence that it assumed anything regarding her damages. Further, to the extent that Trejo contends that the appraisal award improperly determined causation and liability issues and "impermissibly bootstrap[ed] damages from a prior appraisal claim," she offers no evidence or argument regarding how and when that may have happened. Stated otherwise, there is no evidence that the appraisal award was premised on any prior causation determination. Finally, to the extent that Trejo asserts that the appraisal award failed to encompass the repair costs, "a finding of disparity, even gross disparity, between an appraisal award and the cost of repair, cannot support a finding of bias or partiality without additional evidence." *Hennessey v. Vanguard Ins.*, 895 S.W.2d 794, 799 (Tex. App.—Amarillo 1995, writ denied).

We conclude that Trejo failed to meet her burden to set aside the appraisal award, and accordingly, the trial court abused its discretion by granting her motion to set it aside. *See In re Auto Club Indem. Co.*, 580 S.W.3d at 855; *Nat'l Sec. Fire & Cas. Co.*, 523 S.W.3d at 844; *see also In re Philadelphia Indem. Ins.*, 2017 WL 5616272, at *2.

## V.    UMPIRE

Germania contends that the trial court erred by appointing a new umpire in violation of the terms of the insurance policy at issue. In contrast, Trejo argues that the insurance policy allows the trial court to appoint an umpire and further asserts that the trial court had jurisdiction to do so. In an ordinary case, having concluded that the appraisal award was set aside in error, we would not reach this issue. *See* TEX. R. APP. P. 47.4. However, because the appointment of an umpire is relevant to the availability of mandamus relief, we proceed to address the merits of this ruling.

The terms of the insurance policy regarding the appointment of an umpire provide in relevant part that if the appraisers cannot agree on the property damage, either Trejo or Germania "shall first request the American Arbitration Association (AAA) to select an umpire." The policy further provides:

(2)    Only if the AAA advises you and us in writing that it cannot appoint an umpire may we then jointly request a judge of a district court in the judicial district where the residence premises is located to select an umpire. A judge of a district court does not include a commissioner or a judge of a county court at law, of a justice court, a municipal court, a probate court, or of a commissioner's court.

(3)    In order for a person to be qualified to act as an umpire under this appraisal clause, the [person] must be competent, independent, neutral and impartial. A person who has or may [perform], or who is employed by an entity which has or may perform repairs or replacement of our property shall not be qualified to serve as an umpire.

(4)    Upon the appointment of an umpire by AAA, or a district judge, the umpire shall within 5 days disclose in writing to you and to us any known facts which a reasonable person may consider to affect the independence, neutrality or [impartiality] of the umpire, including without limitation any financial or personal interest in the [outcome] of the appraisal.

(5)    Within 20 days of a qualified umpire being appointed, each of the

10

appraisers shall then submit to the umpire, and to both you and us, their appraisals. Their appraisals shall contain all of the information required in part e above, and shall identify each specific matter upon which they disagree and explain in detail why they disagree. Both appraisers and the umpire shall then together meet and confer. The umpire shall then prepare an appraisal. A written appraisal in conformance with and setting forth all the information required in part e. above, agreed upon and signed by the umpire and either one of the two appraisers will determine the **incurred property damage** and the actual cash value of the **incurred property damage** of your claimed loss.

(6)    If a vacancy should occur regarding the umpire, the vacancy shall be filled in accord with the foregoing process by which the [vacating] umpire was appointed. Any appointed umpire is subject to (3) and (4) of this part f.

Thus, the insurance policy expressly requires that "a vacancy" in the umpire's position "shall be filled" by "first request[ing] the [AAA] to select an umpire." There is no indication in the record that the parties or the trial court did so or that the AAA has advised the parties in writing that it cannot appoint an umpire. The umpire selection process in the appraisal clause should be enforced like any other contractual provision. *See Johnson*, 290 S.W.3d at 895. Thus, the trial court abused its discretion by sua sponte appointing a new umpire in the case. *See id.*; *see also In re State Farm Lloyds*, No. 13-22-00545-CV, 2023 WL 2029148, at *1 (Tex. App.—Corpus Christi–Edinburg Feb. 15, 2023, orig. proceeding) (mem. op.) (conditionally granting mandamus relief on grounds that the trial court abused its discretion by appointing an umpire who was not qualified as such under the insurance policy at issue).

## VI.    REMEDY

Trejo asserts that mandamus should not issue because Germania possesses an adequate remedy by appeal to address any error. According to Trejo, the parties can still complete the new appraisal, and if Germania is dissatisfied with the results, it can request

a substitute umpire or request the trial court to set aside the new appraisal award.

As we have stated, appraisal awards may be routinely reviewed by appeal after final judgment. *See In re Tex. Mun. League Intergovernmental Risk Pool*, No. 13-20-00486-CV, 2021 WL 743305, at *2 (Tex. App.—Corpus Christi–Edinburg Feb. 25, 2021, orig. proceeding [mand. denied]) (mem. op.) (collecting cases); *see, e.g.*, *Zhu v. First Cmty. Ins.*, 543 S.W.3d 428, 430 (Tex. App.—Houston [14th Dist.] 2018, pet. dism'd). However, in accordance with our standard of review for original proceedings, we weigh the benefits of mandamus review against the detriments using a fact-specific analysis particular to the case at hand. *In re Acad., Ltd.,* 625 S.W.3d 19, 32 (Tex. 2021) (orig. proceeding); *see In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36.

Having done so, we conclude that Germania lacks an adequate remedy by appeal. In this regard, we note that the Fourteenth Court of Appeals has concluded that appeal is not an adequate remedy for an order setting aside an appraisal award because there is "no material difference between a trial court's improper refusal to enforce an appraisal clause and a trial court's improper setting aside an appraisal award—they both may vitiate or severely comprise the defendant's ability to defend against the plaintiff's breach of contract claim." *See In re Auto Club Indem. Co.*, 580 S.W.3d at 857. And here, the trial court has not only improperly set aside the appraisal award but has also appointed an umpire in violation of the insurance policy's express terms. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 140 (noting that the supreme court has issued mandamus "to enforce contractual rights" and has done so "to enforce the parties' agreement to submit to an appraisal process for determining the value of a vehicle claimed to be a total loss") *see also In re State Farm Lloyds*, 2023 WL 2029148, at *1. Absent mandamus review,

the trial court's errors will cause the parties and public to incur "time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136; *see In re Auto Club Indem. Co.*, 580 S.W.3d at 857–58. We thus conclude that Germania lacks an adequate remedy by appeal.

## VII.   CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, Trejo's response, Germania's reply, and the applicable law, is of the opinion that Germania has met its burden to obtain relief. Accordingly, we conditionally grant the petition for writ of mandamus. We direct the trial court to vacate its orders setting aside the appraisal award and appointing a new umpire and to proceed in accordance with the terms of the insurance policy. Our writ will issue only if the trial court fails to promptly comply.

JAIME TIJERINA
Chief Justice

Delivered and filed on the
6th day of February, 2025.

13