

## NUMBER 13-21-00297-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

---

THOMAS W. SANKEY,                                                   **Appellant,**

**v.**

TEXAS WINDSTORM
INSURANCE ASSOCIATION,                                    **Appellee.**

---

### On appeal from the 156th District Court
### of Aransas County, Texas.

---

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina
Memorandum Opinion by Chief Justice Contreras**

Appellant Thomas W. Sankey sued appellee Texas Windstorm Insurance Association (TWIA) and others in a dispute arising from a property insurance claim. The trial court granted summary judgment in favor of TWIA. In this permissive interlocutory appeal, Sankey contends by one issue that the trial court erred because there were

genuine issues of material fact as to whether: (1) there was "evident partiality" by an appraiser; (2) there was "misconduct or wilful misbehavior" by an appraiser; and (3) the appraisers "conducted the appraisal in a manner that substantially prejudiced" his rights. *See* TEX. INS. CODE ANN. § 2210.574(g). We affirm in part and reverse and remand in part.

## I.    BACKGROUND

Sankey is the owner of a two-story residential property in Rockport, Texas, which was damaged by Hurricane Harvey in 2017. Sankey filed a claim with TWIA, his windstorm and hail insurer. He claimed damages in excess of $300,000, but TWIA accepted his claim only in part and paid out only a portion of the losses he claimed. Objecting to the amount of the award, Sankey invoked the appraisal process under the Texas Insurance Code on May 23, 2018. *See id.* § 2210.574(a). Sankey and Shannon Kimmel, owner of K2 Consulting & Services, LLC (K2), signed an agreement providing K2 with "full authorization to represent [Sankey] at all mediation/appraisal/arbitration proceedings." TWIA appointed Chris White of Paul R. White & Co. as its appraiser.

According to Sankey, K2 initially sent its employee Jeff Whittington to estimate the amount of the loss, and Whittington submitted a report to Kimmel estimating that the damages to the property exceeded the policy limit of $475,000. However, Kimmel evidently did not adopt Whittington's estimate. Instead, according to Sankey, Kimmel "reassigned the appraisal" to independent adjuster Mike Hazlewood, "who was neither employed by K2 nor authorized by Sankey to be retained as the appraiser for the appraiser process."

In early January of 2019, TWIA advised Sankey that the appraisers were attempting to reach an agreement as to the amount of loss, but that an umpire may be

needed to resolve the issue. *See id.* § 2210.574(e). About ten days later, TWIA informed Sankey that the appraisers had in fact reached an agreement: the total amount of loss for both the dwelling and other structures was $233,311.33.

On August 23, 2019, Sankey sued TWIA, K2, Kimmel, and Hazlewood. As to TWIA, Sankey's live petition alleged that (1) the appraisal award should be vacated under insurance code § 2210.574 for various reasons, and (2) TWIA violated insurance code § 2210.575 by denying certain portions of his claim. As to the other defendants, Sankey alleged breach of contract, fraud, and violations of the insurance code.[1]

TWIA filed a motion for traditional summary judgment, arguing that under the insurance code, the appraisal award is binding and may not be vacated.[2] The trial court granted TWIA's summary judgment motion by written order dated May 26, 2020. Pursuant to TWIA's motion, the trial court signed amended orders in 2021 permitting Sankey to file an interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d); TEX. R. CIV. P. 168. We granted Sankey's petition for permissive interlocutory appeal on September 28, 2021. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(f); TEX. R. APP. P. 28.3.

## II.    DISCUSSION

### A.    Standard of Review

A movant for traditional summary judgment has the burden to establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d

---

[1] K2, Kimmel, and Hazlewood are not parties to this appeal.

[2] TWIA's summary judgment motion broadly requested a take-nothing judgment on all claims against it, but the arguments in the motion addressed only Sankey's claims for vacatur of the appraisal award under insurance code § 2210.574. Thus, Sankey's claims against TWIA under § 2210.575 are still pending in the trial court and are not at issue in this appeal.

3

507, 511 (Tex. 2014). A traditional summary judgment motion is properly granted where a defendant conclusively negates at least one essential element of a cause of action. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). If the movant's motion and summary judgment proof facially establish a right to judgment as a matter of law, then the burden shifts to the non-movant to raise a material fact issue. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). To meet its burden, the non-movant must produce more than a scintilla of evidence on the challenged elements. *Amedisys, Inc.*, 437 S.W.3d at 511; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms. Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

We review summary judgments de novo. *Amedisys, Inc.*, 437 S.W.3d at 511. In doing so, we view the evidence in the light most favorable to the non-movant, indulging every reasonable inference and resolving any doubts against the motion. *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) (per curiam); *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). Because the trial court did not specify the basis for the ruling, we must affirm the judgment if any theory advanced in the motion is meritorious. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

## B.    Applicable Law

The purpose of an appraisal clause in an insurance policy is to provide a "binding,

4

extra-judicial remedy for any disagreement regarding the amount of the loss." *Nat'l Sec. Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 845 (Tex. App.—Houston [14th Dist.] 2017, no pet.). An appraiser "acts in a quasi-judicial capacity" and is "bound to exercise the highest degree of judicial impartiality." *Int'l Serv. Ins. v. Brodie*, 337 S.W.2d 414, 417 (Tex. App.— Fort Worth 1960, writ ref'd n.r.e.).

TWIA is the "insurer of last resort for windstorm and hail insurance in the seacoast territory" of Texas and is governed by chapter 2210 of the Texas Insurance Code. Tex. Ins. Code Ann. § 2210.001. Under that chapter, a policyholder must file a claim within one year from the date the damage occurs. *Id.* § 2210.573(a). If TWIA accepts the claim at least in part, but the claimant disputes the amount of loss TWIA will pay, then the claimant may demand an appraisal. *Id.* § 2210.574(b). Generally, "the appraisal decision is binding on the claimant and [TWIA] as to the amount of loss [TWIA] will pay . . . and is not appealable or otherwise reviewable." *Id.* § 2210.574(f). However, a claimant may,

> not later than the second anniversary of the date of an appraisal decision, file an action in a district court in the county in which the loss that is the subject of the appraisal occurred to vacate the appraisal decision and begin a new appraisal process if:
>
> (1)    the appraisal decision was obtained by corruption, fraud, or other undue means;
>
> (2)    the rights of the claimant . . . were prejudiced by:
>
>       (A)    evident partiality by an appraisal umpire;
>
>       (B)    corruption in an appraiser or appraisal umpire; or
>
>       (C)    misconduct or wilful misbehavior of an appraiser or appraisal umpire; or
>
> (3)    an appraiser or appraisal umpire:
>
>       (A)    exceeded the appraiser's or appraisal umpire's powers;
>
>       (B)    refused to postpone the appraisal after a showing of sufficient

cause for the postponement;

(C)     refused to consider evidence material to the claim; or

(D)     conducted the appraisal in a manner that substantially prejudiced the rights of the claimant . . . .

*Id.* § 2210.574(g).

## C.     Summary Judgment Evidence

In support of its summary judgment motion, TWIA attached various pieces of evidence, including an unsworn declaration by Kelly Urbanec, a TWIA claims examiner. Urbanec stated in relevant part:

17.     I am authorized by TWIA to state on its behalf that TWIA denies that any fraud, corruption or irregularity occurred in the course of the appraisal process. TWIA's records demonstrate that the appraisal of the Sankey Claim was handled in an appropriate manner, consistent with insurance industry standards, as well as the Policy's terms and conditions.

18.     TWIA fully complied with all Policy terms and conditions. TWIA has paid for all covered damage made a part of the Sankey Claim. When its payment was disputed by Mr. Sankey and he invoked appraisal, TWIA participated in the appraisal process and paid the full value appraisal award, taking into account prior payments and deductibles, and all policy terms and conditions. TWIA also reimbursed Mr. Sankey for half of his appraiser's fees.

19.     TWIA does not owe for recoverable depreciation until receipts showing completion of repairs in a timely manner have been submitted. Based on receipts submitted by Mr. Sankey, TWIA has fully paid all recoverable depreciation owed to Mr. Sankey on his claim.

20.     By properly adjusting his claim, by participating in the appraisal process, and by making the aforementioned payments, TWIA has fulfilled any obligations potentially owed to Mr. Sankey under the policy in question. TWIA owes no additional policy benefits to Mr. Sankey relating to the Sankey Claim.

TWIA also produced an unsworn statement by its appraiser White, who stated in relevant part that he personally inspected the property on two occasions, and he prepared

6

an estimate of losses based on the damages he observed. White further averred:

10. I discussed my position regarding the value of the loss with Mr. Sankey's appraiser, Mike Hazlewood, and we reached an agreement on the amount. Our agreement is documented in the Appraisal Award which I executed on January 14, 2019 and Mike Hazlewood signed on January 15, 2019. A true and correct copy of that award is attached as Exhibit G to TWIA's Traditional Motion for Summary Judgment.

11. The appraisal award was the result of an arms-length negotiation between myself and Mr. Hazlewood. The appraisal was conducted in a fair and impartial manner, which respected the rights and interests of Mr. Sankey, as well as TWIA.

12. The appraisal was conducted in a manner consistent with dozens of prior appraisals in which I have participated, and the process was concluded without outside influence, misconduct, fraud or corruption. I observed no corrupt act, misbehavior or misconduct by any participant in the appraisal process. In no way were Mr. Sankey's interests prejudiced in the appraisal process.

A January 16, 2019 letter from White to TWIA was attached to the summary judgment motion as Exhibit G. Attached to the letter, in turn, was an "Appraisal Award" document, signed by both White and Hazlewood, stating that the total replacement cost for damages to the dwelling and other structures is $233,311.33.

The evidence also included a second "Appraisal Award" which TWIA sent to Sankey on January 21, 2019, stating that TWIA was sending a check of $16,440.03 to Sankey based on the following calculation:

7

| | |
|---|---|
| **Appraisal Award Estimate** | **$233,311.33** |
| Supplemental Damage | -$25,613.80[3] |
| Total Appraisal Award | $207,697.53 |
| Less Prior Payments | -$152,047.65 |
| Less Recoverable Depreciation | -$28,084.70 |
| Less Non-Recoverable Depreciation | -$342.90 |
| **Net Appraisal Award** | **$17,472.28** |
| Less ½ of TWIA's Appraiser's Fees | -$1,032.25 |
| Less ½ of Policyholder's Appraiser's Fees | $TBD |
| **Net Amount Due** | **$16,440.03** |

According to another letter sent that same day, TWIA issued another check for $17,626.40 to Sankey for the "Supplemental Damage" claim. On January 23, 2019, TWIA sent a third "Appraisal Award" letter to Sankey stating that a $1,200.00 check, representing half of the "Policyholder's Appraiser's Fees," would be sent to Sankey. And on February 22, 2019, TWIA sent a fourth award letter to Sankey stating that, pursuant to Sankey's request for "recoverable depreciation that was previously withheld from TWIA's prior payment," an additional $28,094.70 would be paid to Sankey. This evidence thus established that TWIA paid out a total amount of $214,198.78 in benefits on Sankey's claim.

In his response to the summary judgment motion, Sankey attached his own

---

[3] With respect to "Supplemental Damage," the letter stated:

The appraisal award amount included for windows, cameras, lights, sailfish, decking, lattice, elevator code upgrade and a storm door which were outside the scope of appraisal and the Appraisal Award Amount has been reduced accordingly. TWIA will address your claim for damage to the windows, cameras, lights, sailfish, decking, lattice and a storm door as a supplemental claim and the coverage determination will be made separately.

unsworn declaration in which he stated, in relevant part, as follows:

9. I engaged [K2] specifically appointing [Kimmel] to be my appraiser. Kimmel indicated he could represent me as a public adjuster to represent him [sic] in negotiating with TWIA. I told him I was through with negotiations with TWIA since we had been trying that route for months without success. Kimmel agreed to be the appraiser. Kimmel's office sent me a generic form that referenced various potential roles for Kimmel, including appraisal. It was clear to me that the agreement covered Kimmel's role as my appraiser.

10. Even before I sent in the form, Kimmel's office opened my file. Kimmel directed [Whittington] to estimate the loss to my Property instead. Whittington contacted me while at my property and asked me what my policy limits were. When I told him, he said his estimate already exceeded the policy limits. Ultimately, Whittington estimated the loss to my Property at $424,183.33. Inexplicably, Kimmel did not rely on Whittington's estimate to conduct the appraisal. Furthermore, Kimmel did not share the estimate with me at any time. Instead, Kimmel reassigned the appraisal role to [Hazlewood]. I was not aware of this reassignment until after Kimmel had already forwarded a Letter of Representation to TWIA [] which purportedly appointed Hazlewood as my appraiser.[4] I did not appoint Hazlewood and was not aware of Hazlewood's appointment until the appraisal was already in progress in September 2018. By that time, I was well over a year into the claim and felt I had little option but to proceed with the appraisal. I believed at the time that Haz[le]wood was a competent adjuster who worked for Kimmel. I was unaware he was unaffiliated with Kimmel and was merely an independent appraiser.

11. I learned in September of 2018 that TWIA has appointed Chris White as its appraiser. I was not aware whether Hazlewood and White appointed an umpire as the insurance policy requires. Likewise, neither TWIA nor White ever advised me of any potential conflict in the White appointment arising from his numerous appointments by TWIA over the years. Had I known that White was heavily financially invested in TWIA appointments, I would have objected to his

---

[4] The letter Sankey refers to, a copy of which was attached to Sankey's summary judgment response, states:

I, Tom Sankey, . . . wish to invoke the Appraisal Clause in my Insurance Policy to get resolution on my insurance claim that occurred on 8-17. My appraiser information is the following: Mike Hazlewood . . . . Please forward your appraisers' information to Mike Hazlewood within the time stated in the policy. Also, please make sure that your appraiser is able to complete this in a timely fashion.

The letter states that "TWIA" is the "Insurance Company" and includes a claim number; however, the letter is not signed.

appointment.[5]

. . . .

13.     Hazlewood estimated my Property damages to be $308,801.01.[6] Hazlewood never informed me of his estimate though. He told me that he was negotiating with TWIA's appointed appraiser and that the other appraiser had agreed to an award that allowed for $120,000 of "new money." Hazlewood asked me what amount I would accept. Having never been through the appraisal process, I was unaware that this question was unusual for an appraiser to ask. I advised him I wanted to get around $200,000 of new money, which I believed would pay for the repairs. Otherwise, I was satisfied if Hazlewood took the matter to an umpire to decide. That was my last conversation with Hazlewood.

14.     Thereafter, I learned from TWIA that the appraisers were unable to agree and would likely appoint an umpire.[7] About a week later, TWIA informed me that the two appraisers had reached an agreement. I was shocked to hear that an agreement had been reached, given the lack of prior agreement. TWIA refused to disclose the amount of the award. I later learned that TWIA was not finished manipulating the award, and did not want to disclose the award amount to me. I tried to contact Hazlewood to learn about the award but he refused to respond to calls or text messages.

(Internal references omitted.)

Sankey also attached a copy of his policy with TWIA, which states in relevant part:

11.     Disputes Concerning the Amount of Loss—Exclusive Remedy

        a.      If you dispute the amount we will pay for a claim, your exclusive remedy under this policy is appraisal.

        . . . .

        f.      Appraisal Process.

---

[5] Sankey's summary judgment response included excerpts from a deposition in which White conceded that he had acted as an appraiser for TWIA, and was compensated for his services, on "dozens" of prior occasions.

[6] A copy of Hazlewood's estimate was attached to Sankey's declaration.

[7] On January 8, 2019, TWIA's claim adjuster Jeff Goretzke sent an email to Sankey stating: "I received an update from the TWIA appraiser noting he is working with your appraiser to reach an agreement however it appears they may engage an umpire on the appraisal. I will update you as soon as I receive any additional information."

10

(1)    If you demand appraisal of the amount we will pay for a claim, you and we will each select a competent and independent appraiser. You shall notify us of your appraiser's identity. We shall notify you of our appraiser's identity within 10 days after we receive notice of your appraiser's identity. The two appraisers will choose a competent and independent umpire. If they cannot agree upon an umpire within 15 days, the commissioner of insurance shall select an umpire from a roster of qualified umpires maintained by the Texas Department of Insurance.

. . . .

(6)    If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will determine the amount of the loss.

Finally, Sankey attached a copy of the contract he executed with K2, entitled "Engagement Agreement for Public Adjusters Services," which states in relevant part:

I, Tom Sankey, hereby retain [K2], Public Adjuster and Loss Consultant to be my/our agent and representative to adjust, advise and assist in the settlement of my insurance claim with TWIA for loss and damage resulting from wind and/or hail that occurred on 8-17 . . . . You are instructed to negotiate with my agent, [K2], concerning the insurance claim for damages sustained at the address represented above. I grant [K2] full authorization to represent me at all mediation/appraisal/arbitration proceedings, and further authorize [K2] to execute any and all mediation/appraisal/arbitration agreements on my behalf.

I have assigned a portion of my claim in an amount not to exceed 10% of the value of the total loss determined by the insurance company, plus any reasonable expenses.

The agreement did not mention Kimmel, Hazlewood, or any other individual by name. It appears to have been signed by Sankey and Kimmel.

## D.    Analysis

According to our review of the pleadings, Sankey alleged that the appraisal award should be vacated for six reasons: (1) Kimmel improperly "delegated" his duties as

11

appraiser to Hazlewood; (2) Kimmel and Hazlewood "refus[ed] to consider" Whittington's report; (3) Hazlewood "completely abandoned his estimate and agreed to accept White's estimate" of the amount of loss; (4) Hazlewood and White failed to choose an umpire; (5) White was not impartial because he had an "undisclosed financial bias"; and (6) White "improperly manipulated" the appraisal award. *See id.* § 2210.574(g). We address each allegation in turn.

## 1. Delegation of Appraiser Duties

First, Sankey alleged in his petition that Kimmel improperly "delegated" his duties as appraiser to Hazlewood. *See* TEX. INS. CODE ANN. §§ 2210.574(g)(2)(C) (providing that an appraisal award may be vacated if the claimant's rights were prejudiced by an appraiser's misconduct), (g)(3)(A) (same if an appraiser "exceeded [their] powers"); 28 TEX. ADMIN. CODE § 5.4213(f) ("An appraiser may not . . . delegate the duty to decide to any other person."). TWIA did not directly address this allegation in its motion for summary judgment. Although TWIA contended that the appraisal was "valid," and White stated in his declaration that he negotiated "with Mr. Sankey's appraiser, Mike Hazlewood," TWIA provided no argument or evidence concerning whether Hazlewood had been duly appointed or whether he was properly serving as Sankey's appraiser. Instead, TWIA's summary judgment motion argued only that it complied with the policy and that the appraisal award was binding because it was not obtained by corruption, fraud, or other undue means.[8]

On appeal, TWIA argues: (1) Sankey signed an agreement granting K2 "full

---

[8] In his summary judgment response, Sankey averred that he "specifically appoint[ed Kimmel] to be [his] appraiser" and "did not appoint Hazlewood."

authorization to represent [him] at all mediation/appraisal/arbitration proceedings," and therefore K2 had the authority to unilaterally appoint Hazlewood as Sankey's appraiser; (2) Kimmel was a public adjuster and therefore had a potential conflict of interest which would have precluded his personally serving as Sankey's appraiser, *see* 28 TEX. ADMIN. CODE § 5.4212(b)(8)[9]; and (3) Sankey knew of Hazlewood's appointment as his appraiser in September 2018 and therefore waived any objection to that appointment. *See LaLonde v. Gosnell*, 593 S.W.3d 212, 219 (Tex. 2019) (noting that conduct that is unequivocally inconsistent with claiming a right constitutes a waiver of that right). But TWIA made none of these arguments in its summary judgment motion. We may not affirm summary judgment on grounds not raised in the summary judgment motion. *Henkel v. Norman*, 441 S.W.3d 249, 251 n.1 (Tex. 2014) (per curiam) (citing *Stiles v. Resolution Tr. Corp.*, 867 S.W.2d 24, 26 (Tex. 1993)); *see* TEX. R. CIV. P. 166a(c). For the foregoing reasons, we conclude TWIA did not establish its entitlement to judgment as a matter of law on Sankey's claim regarding Kimmel's "delegation" of his duties as appraiser to Hazlewood. Accordingly, the trial court erred by granting summary judgment dismissing this claim.

## 2. Refusal to Consider Evidence

Second, Sankey alleged in his petition that the award should be vacated because

---

[9] "An appraiser must disclose to both parties any potential conflicts of interest no later than the fifth day after being hired, and before the appraiser begins work on the appraisal." 28 TEX. ADMIN. CODE § 5.4213(a). A potential conflict of interest exists when, among other things, the appraiser:

(8)      adjusted the loss or acted as a public adjuster on the loss involved in the claim,

. . . .

(10)      is an employee of the adjusting company or public insurance adjusting company that adjusted the loss or represented the claimant on the loss; or

(11)      has any other direct or indirect interest, financial or otherwise, of any nature that substantially conflicts with the appraiser's duties.

*Id.* § 5.4212(b).

13

Kimmel and Hazlewood "refus[ed] to consider" Whittington's report. *See* TEX. INS. CODE ANN. § 2210.574(g)(3)(C) (providing that an appraisal award may be vacated if an appraiser "refused to consider evidence material to the claim"). TWIA's summary judgment motion and evidence did not address this allegation and made no mention of Whittington's report. Accordingly, TWIA failed to establish its entitlement to judgment as a matter of law, and summary judgment was also improper on this claim. *See Henkel*, 441 S.W.3d at 251 n.1.

### 3. Failure to Appoint Umpire

Third, Sankey alleged that the award should be vacated because Hazlewood and White failed to appoint an umpire. He argued that the appraisers are required to appoint an umpire, regardless of whether the appraisers disagree on the amount of loss, under both the policy language ("The two appraisers will choose a competent and independent umpire.") and the statute. *See* TEX. INS. CODE ANN. § 2210.574(e).[10] In its summary judgment motion, TWIA argued that the "matter" of Sankey's award "would . . . go to an umpire under the policy terms" "[o]nly if Haz[le]wood and White could not agree" on the amount of loss. We construe this argument to mean that, even if the failure to appoint an umpire constituted "misconduct or wilful misbehavior" on the part of the appraisers, *see id.* § 2210.574(g)(2)(C), that failure did not prejudice Sankey's rights because the

---

[10] The statute provides:

> If a claimant demands appraisal under this section and the appraiser retained by the claimant and the appraiser retained by [TWIA] are able to agree on an appraisal umpire to participate in the resolution of the dispute, the appraisal umpire is the umpire chosen by the two appraisers. If the appraiser retained by the claimant and the appraiser retained by [TWIA] are unable to agree on an appraisal umpire to participate in the resolution of the dispute, the commissioner shall select an appraisal umpire from a roster of qualified umpires maintained by the department.

TEX. INS. CODE ANN. § 2210.574(e).

14

appraisers did not disagree on the amount of loss.

An appraisal award may be vacated for "misconduct or wilful misbehavior of an appraiser" only if the rights of the claimant or TWIA were prejudiced as a result thereof. *See id.* Here, the appraisers agreed that Sankey's total loss amounted to $233,311.33; thus, even if an umpire had been appointed, the umpire would not have been involved in the case. *See id.* § 2210.574(e). TWIA therefore established its entitlement to judgment as a matter of law on Sankey's claim regarding the appraisers' failure to appoint an umpire. Because Sankey did not produce evidence creating a fact issue, summary judgment was proper on this claim. *See* TEX. R. CIV. P. 166a(c).

### 4. Abandonment of Prior Estimate

Fourth, Sankey's petition argued that Hazlewood "completely abandoned his estimate and agreed to accept White's estimate" of the amount of loss without offering any "explanation for his failure to advocate for his own estimate." Sankey argued that this constituted "misconduct or wilful misbehavior" and indicated the award was "obtained by corruption, fraud, or other undue means." *See* TEX. INS. CODE ANN. § 2210.574(g)(1), (g)(2)(C).[11] On appeal, Sankey alleges that Hazlewood agreed to White's estimate only "to avoid the time and trouble of dealing with an umpire." In its summary judgment motion, TWIA argued that the appraisal award was not obtained by undue means, and it supported this argument with White's declaration. As noted above, White averred that the appraisal award "was the result of an arms-length negotiation" and "was conducted in a fair and impartial manner," and that he observed "no corrupt act, misbehavior or

---

[11] If an appraisal award was "obtained by corruption, fraud, or other undue means," the claimant need not show that the claimant's rights were prejudiced. *See* TEX. INS. CODE ANN. § 2210.574(g)(1).

15

misconduct by any participant in the appraisal process." We conclude this was sufficient to establish TWIA's entitlement to judgment as a matter of law on this specific claim.

In his response to the summary judgment motion, Sankey pointed to the statement in his own declaration that Hazlewood initially estimated that Sankey's losses exceeded $300,000. Sankey also stated in his declaration that Hazlewood asked him "what amount [he] would accept" to resolve the claim, which Sankey asserts was improper. On appeal, Sankey argues that, shortly before he was notified of the appraisers' agreement on an award, he "received a letter from TWIA indicating that the appraisal was headed to resolution by an umpire because the appraisers were unable to reach an agreement." Sankey contends that this evidence "show[s] that Haz[le]wood put his own interests ahead of performing a fair and impartial appraisal and engaged in misconduct that prejudiced Sankey."

We disagree. Sankey did not cite authority, and we find none, providing that an appraiser commits misconduct or lacks impartiality if he "abandons" his own initial estimate and agrees to the estimate of the opposing appraiser. *See Hennessey v. Vanguard Ins.*, 895 S.W.2d 794, 799 (Tex. App.—Amarillo 1995, writ denied) ("[A] finding of disparity, even gross disparity, between an appraisal award and the cost of repair, cannot support a finding of bias or partiality without additional evidence."). Though Sankey repeatedly contends that Hazlewood acted improperly by asking Sankey what amount he would accept to resolve the claim, Sankey does not explain why that action was improper or whether his rights were prejudiced by that action. Finally, Sankey's argument regarding the timing of the appraisal decision is unavailing. He argues that there was "no explanation" for why Hazlewood "completely caved" after previously disagreeing

16

with White as to the amount of loss. However, the email sent from TWIA to Sankey on January 8, 2019, did not say that the appraisers had failed to reach an agreement—rather, it stated that the appraisers are "working . . . to reach an agreement" and that "they may engage an umpire." The fact that they subsequently reached an agreement and did not need to engage an umpire is therefore not circumstantial evidence of partiality or fraud, as Sankey claims.

With respect to this claim, the summary judgment evidence supports no more than a mere surmise or suspicion that any of the grounds for vacatur under § 2210.574(g) have been satisfied. *See* TEX. INS. CODE ANN. § 2210.574(g); *Kindred*, 650 S.W.2d at 63. Summary judgment was proper on this claim.

### 5. "Undisclosed Financial Bias"

Fifth, Sankey argued that the award should be vacated because White had an "undisclosed financial bias." Sankey alleged the following in his live petition:

> White has been appointed by TWIA on numerous occasions prior to the Sankey appraisal and was financially invested in aiding TWIA to come to a determination that was to TWIA's economic advantage. Further, White's company was also heavily invested in TWIA work and has lost all independence in its appraisal work. However, neither TWIA nor White ever disclosed to Sankey of his potential conflict of interest in acting as TWIA's selection as an independent appraiser. Had Sankey known that TWIA was relying on a financially motivated appraiser to be the "independent" appraiser, he would have objected to the appointment.

On appeal, he argues that White's "financial interest" in the appraisal rendered him partial. *See* TEX. INS. CODE ANN. § 2210.574(g)(2)(A); *Gen. Star Indem. Co. v. Spring Creek Vill. Apartments Phase V, Inc.*, 152 S.W.3d 733, 737 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("An appraiser with a financial interest in the outcome of the appraisal is not impartial.").

In his declaration, White stated that the appraisal "was conducted in a fair and

17

impartial manner" and "[i]n no way were Mr. Sankey's interests prejudiced in the appraisal process." This was sufficient to establish TWIA's entitlement to judgment as a matter of law on this specific claim; accordingly, the burden shifted to Sankey to produce evidence creating a fact issue. *See* TEX. R. CIV. P. 166a(c); *Centeq Realty, Inc.*, 899 S.W.2d at 197. In attempting to meet that burden, Sankey produced White's deposition testimony, in which he conceded that TWIA had appointed him as an appraiser and had paid him for that service on "dozens" of prior occasions. White also testified that two other employees of his company have acted as appraisers for TWIA. Sankey also attached discovery responses in which TWIA conceded that it appointed Paul R. White & Co. as an appraiser on 115 different Hurricane Harvey claims, and it paid the company $409,900.14 for services performed in connection with those appointments.

The existence of a pre-existing business relationship between an insurer and an appraiser, without more, does not support a finding of bias or partiality. *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786–87 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 255 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.); *Gardner v. State Farm Lloyds*, 76 S.W.3d 140, 143–44 (Tex. App.—Houston [1st Dist.] 2002, no pet.)). In *Franco*, the court found no fact issue as to bias where the appraiser was not an employee of the insurer, the appraiser's report and conclusions "were his own," there was no evidence that the insurer "influenced or exercised control" over the appraiser, and there was no evidence that the appraiser had a "financial interest" in the claim. *Id.* at 787. In *Gardner*, the court made the same finding in a hail damage case where the appraiser's employer: (1) "wrote a training program" used by the insurer about hail damage claims; (2) wrote "numerous publications" about

18

hailstorm evaluations and served as a "consultant" for the insurer on those matters; and (3) was paid by the insurer "for assignments across the United States over seven years." *Gardner*, 76 S.W.3d at 143. Sankey contends that his case is distinguishable from *Franco* because White "was making substantial amounts of money by acting as an appraiser specifically for TWIA, specifically in Texas, and specifically on Hurricane Harvey claims." He contends that *Gardner* is distinguishable because in that case, there was "no evidence of the type or extent of the work or evidence of the amount the [appraiser's employer] received over that time period." Sankey contends: "It logically follows that White had at least an indirect financial interest in delivering low estimates to TWIA on Harvey claims to ensure his continued employment on the more than 100 claims then and in the future based on delivering such results to TWIA."

We disagree that Sankey's evidence establishes that White was not impartial. The fact that TWIA appointed White as its appraiser on "dozens" of other Hurricane Harvey claims does not itself establish bias or partiality. *See Am. Cent. Ins. v. Terry*, 298 S.W. 658, 662 (Tex. App.—Texarkana 1927, no writ) (holding, where insured argued that the insurance company's appraiser was not impartial because the company had selected him as its appraiser "many times before" and he "had consistently served with partiality and bias in making awards of amount of damage," that "[e]ven if true, this fact alone would not necessarily or probably be inconsistent with his impartiality in the present case, in the absence of some act or conduct tending to exhibit his serving the company's interest as a partisan would"). That an appraiser has previously been appointed by TWIA or has been paid fees by TWIA is not one of the "potential conflict[s] of interest" which an appraiser must disclose to the parties under the regulations. *See* 28 TEX. ADMIN. CODE §§ 5.4212(b),

19

5.4213(a). An appraiser's "direct or indirect interest, financial or otherwise, of any nature that substantially conflicts with the appraiser's duties" is a potential conflict, *see id.* § 5.4212(b)(11), but Sankey does not allege that White's prior service as appraiser for TWIA specifically affected his duties in appraising his claim. As in *Franco*, there is no suggestion that TWIA "influenced or exercised control" over White or that White had any financial interest, direct or indirect, in the outcome of Sankey's claim. *See Franco*, 154 S.W.3d at 787. A reasonable trier of fact could not find, from this evidence, that White was "evident[ly] partial" or that the appraisal award was "obtained by corruption, fraud, or other undue means." *See* TEX. INS. CODE ANN. § 2210.574(g)(1), (g)(2)(A). The trial court properly granted summary judgment on this claim.

### 6. "Manipulation" of Appraisal Award

Finally, we address Sankey's claim that White "improperly manipulated" the appraisal award. Sankey alleged in his petition that the "Appraisal Award" form, which was signed by the appraisers, was drafted by White and "contained language that conditioned the award on further manipulation of the award amount, unilaterally, by TWIA." We have reviewed the "Appraisal Award" and cannot identify the language to which Sankey refers. On appeal, Sankey suggests that White "manipulated" the award by attaching a copy of White's own itemized estimate to the award form "as if [it] had been agreed to by Haz[le]wood."

Regardless of the specifics of Sankey's allegation, White's statement that he conducted the appraisal in a "fair and impartial" manner, and that he observed no misconduct, was sufficient to establish TWIA's entitlement to judgment as a matter of law on this claim. Moreover, Sankey failed to produce evidence creating a fact issue. Sankey

20

stated in his declaration that "White's estimate attached to the award was not signed by Hazlewood and was prepared solely by White," but this by itself does not support any grounds for vacatur of the appraisal award under § 2210.574(g). Summary judgment was proper on this claim.

### III. CONCLUSION

We reverse the trial court's summary judgment dismissing Sankey's claims: (1) that Kimmel's improperly "delegated" his appraiser duties to Hazlewood; and (2) that Kimmel and Hazlewood "refus[ed] to consider" Whittington's report. Those claims are remanded to the trial court for further proceedings. The remainder of the judgment is affirmed.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
21st day of April, 2022.